IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2015

## JOSHUA FAULKNER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 11-07186    James C. Beasley Jr., Judge**

_____

**No. W2014-01572-CCA-R3-PC  - Filed June 11, 2015**

_____

The Petitioner, Joshua Faulkner, pursuant to a plea agreement, pleaded guilty to aggravated burglary, employing a firearm during the commission of a dangerous felony, and aggravated assault, with a total effective sentence of ten years of incarceration.  Thereafter, the Petitioner filed, _pro se_, a petition for post-conviction relief.  Counsel was appointed and, after a hearing, the post-conviction court denied the petition.  On appeal, the Petitioner maintains that Counsel was ineffective because he coerced the Petitioner into entering a guilty plea. After a thorough review of the record and relevant law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Rosalind E. Brown, Memphis, Tennessee, for the appellant, Joshua Faulkner.

Herbert H. Slatery III, Attorney General and Reporter; Meredith Devault, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General for the appellee, State of Tennessee

**OPINION**
**I. Facts**

The Petitioner was charged with aggravated burglary, employing a firearm during a felony, attempted aggravated robbery, aggravated assault, and theft of property over $1,000.

On October 25, 2012, pursuant to a negotiated plea agreement with the State, the Petitioner pleaded guilty to aggravated burglary, employing a firearm during a felony, and aggravated assault. The State dismissed the remaining charges. At the guilty plea submission hearing, the State presented the following factual basis in support of the Petitioner's guilty plea:

> If the matter had gone to trial the State would have shown that on August the 16th of 2011, Chadrick Lawson (phonetically) heard loud banging noises coming from his front door. He went downstairs to see what it was and was met by the [Petitioner] who was armed with a handgun. The male told him not to move and then fired a shot.
>
> Mr. Lawson advised he ran upstairs and looked out the window. The male took a fifty-inch television, but dropped it in the yard before getting into a vehicle that was occupied by two other people and fled the scene.
>
> Responding Officers located the vehicle. The Officer found this [Petitioner], Cordricus Harding and Michael Briggs and located two handguns inside the vehicle.
>
> [The Petitioner] was identified by Mr. Lawson on the scene as the person who came into his home, took his television and fired a shot at him.

The Petitioner stipulated to these facts.

The Petitioner confirmed that it was his signature on the "petition for waiver of trial by jury and to request an acceptance of a guilty plea" and that his attorney ("Counsel") had reviewed and explained this document to him. He confirmed his understanding of the contents of the petition and asked if he would be sent to the "penal farm." The trial court stated that the Petitioner "probably" would but clarified that it could not "guarantee that." The trial court then reviewed with the Petitioner the sentence, his rights, and the consequences of waiving those rights, and the Petitioner confirmed his understanding. The Petitioner responded in the negative when asked if he felt coerced into entering the agreement or if any one had promised him something to induce him to accept the plea. The Petitioner agreed that he was satisfied with "everything [Counsel had] done."

Upon further questioning by Counsel, the Petitioner stated that he was not under the influence of alcohol but that he had been prescribed "Respidol" to help him sleep. He said that he was not sleepy at the time of the hearing and understood "everything going on." He agreed that he knew the difference between right and wrong and that he had been evaluated as competent to proceed in the case. The trial court then made the following findings:

2

I am going to rule you understand what you are doing, understand the process that we are going through, that you are entering this guilty plea freely, voluntarily, without threats, or coercion, because this is what you want to do. I am going to rule that you have been represented by counsel under the guidelines required by the law.

On October 15, 2013, the Petitioner filed a *pro se* petition seeking post-conviction relief. The post-conviction court appointed counsel and held a hearing on the petition on June 27, 2014, and the parties presented the following evidence: The Petitioner testified that he was twenty-one years old at the time of the guilty plea submission hearing. He said that he told Counsel "multiple times" that he wished to proceed to trial. The Petitioner said that Counsel had told him, "that he wasn't able to defend me to the best of his ability. He told me my signing [the plea agreement] would be in my best interest." About the crimes for which he was convicted, the Petitioner stated that he did not employ a firearm or shoot a weapon. He said that he "got shot at" but never fired a gun.

The Petitioner testified that he told Counsel that he wanted to go to trial and pursue a self-defense strategy. He explained that the incident was a "drug deal gone bad" and that the victim had pulled a gun on him. The Petitioner said that he did not tell the trial court that his plea was not voluntary at the hearing because Counsel had told him that he could later file a motion and come back to court. He said that he was "unaware and dumb-founded" about "what was going on," so he said "yes, just to get it over with."

The Petitioner testified that Counsel never reviewed with him the discovery in the case and merely told him to "take the guilty plea." He maintained that he did not commit the burglary for which he was convicted.

On cross-examination, the Petitioner agreed that he had two previous convictions for aggravated robbery and one previous conviction for possession of a controlled substance with the intent to sell. He agreed that based on these previous convictions, he would have been eligible to be sentenced as a Range II offender with a lengthier sentence than the sentence he received pursuant to the plea agreement. The Petitioner denied understanding his sentence, explaining that Counsel only told him that it was in his best interest to accept the State's plea offer because Counsel could not represent the Petitioner at trial. The Petitioner agreed that he never expressed any reservations about pleading guilty during the guilty plea submission hearing.

Counsel testified that the Petitioner indicated initially that he wanted a trial but after further conversations, the Petitioner said it was clear the evidence against him was a "very

3

difficult problem." Counsel explained that a gunshot residue test was done on the Petitioner, and the results were positive. Counsel said that he reviewed all of the discovery with the Petitioner, which included the results of the gunshot residue test, the Petitioner's signed confession, a bullet hole inside the residence, and the police officers' finding a television outside the victim's residence consistent with the victim's allegation that the Petitioner had taken his television. Counsel said that the Petitioner told him that the victim had fired a gun at him but that there was no proof to support the Petitioner's allegation.

Counsel testified that the Petitioner "certainly" had the right to proceed to trial but that Counsel advised him that it was in his best interest to accept the State's offer. Counsel explained that he negotiated "the minimum deals" on these cases, and the Petitioner's "exposure [to a greater sentence at trial] [wa]s horrible." Counsel stated, "[The Petitioner] ha[d] prior felonies and he would just be exposing himself to a long, long prison sentence if he [went] to trial and [lost]." Counsel denied telling the Petitioner that he would not take the case to trial; he reiterated that he told the Petitioner it was in his "best interest" to avoid trial due to the "overwhelming proof."

Counsel testified that the Petitioner had told him that this incident was a "dope deal gone bad." Counsel said that there were three defendants in this case; all three initially claimed they were at the victim's house to buy marijuana, but the co-defendants later changed their story. Counsel said that he investigated the victim and found no criminal record or any kind of drug history for the victim. The victim claimed that the Petitioner grabbed his television and took it out the door. The Petitioner maintained that he did not move the television. He admitted having a gun, admitted discharging the gun, and admitted he was at the victim's residence to buy marijuana. The police, however, found the victim's television outside. Counsel said that it would have been difficult to find a plausible explanation for the movement of the television.

On cross-examination, Counsel testified that he met with the Petitioner on "numerous occasions." Counsel reviewed the discovery in the case with the Petitioner which included the statements of the co-defendants and the victim. Counsel said that it was the Petitioner's decision to accept the plea agreement, and he denied pressuring the Petitioner to accept the agreement. Counsel recalled that the Petitioner "didn't like it, because he wanted to be found not guilty," but the Petitioner recognized that it was a "difficult case." Counsel expressed no hesitation about proceeding to trial and denied ever telling the Petitioner that he would not represent him at trial.

After hearing this evidence, the post-conviction court made the following findings:

Well, my review of the guilty plea and the file in this case indicate that

4

both co-defendants, one had already entered a plea, the other entered a plea this particular day, both of them admitted their role and the part that they played, neither of them had a record, both of them were diversion eligible.

[The Petitioner] appeared to be the ring leader. [The Petitioner] was thoroughly questioned, not only by the Court and he was questioned by [Counsel].

The test is whether or not he was [properly] represented to the extent that his counsel met with him, advised him, advised him what the situation was, the weight of the case, the weight of the proof and that the ultimate decision was [the Petitioner]'s.

Now, to come in after the fact and say, I really wanted a trial, that is a question that has to be determined. At the time this plea was entered [the Petitioner] expressed to this Court that he did not want a trial, that he wanted to enter a guilty plea.

[The Petitioner] understood his rights. [The Petitioner] had previously been through this process and understood how all of this worked.

[The Petitioner] was also questioned by this Court and the only question that [the Petitioner] asked this Court, I do recall that was, he wanted to know whether or not he would be going to the penal farm. And my recollection is that I told him I wasn't sure whether he would go to the penal farm, or not, he could.

Normally speaking, a sentence that he was receiving, my understanding was that they would keep him at the penal farm, but I didn't know that and he indicated that he understood and I said, "You still want to go forward?" He said, "Yes, I do".

And, this Court watched [the Petitioner] in his guilty plea and watched him answer the questions that were given to me. I got no indication that this was coerced, or not knowingly entered, but that it was freely and voluntarily entered.

Not that it was a pleasant decision to make, but it was a decision that had to be made and [the Petitioner], in my opinion, entered his guilty plea freely and voluntarily.

5

I don't believe [Counsel] coerced him. I don't believe [Counsel] tricked him. I don't believe [Counsel] improperly represented him. I don't believe [Counsel] would not have gone forward with a trial if [the Petitioner] had expressed a desire to go forward with a trial.

I think [Counsel] explained to him what the situation was, got the best offer he could get, which quite frankly, was a minimum offer and [the Petitioner] realized where he was and what he was facing and he opted to take his best out.

And as soon as he reached the penal farm he decided to go this route. But, I don't find that there is any basis today for me to set the guilty plea aside and for me to find that [Counsel] acted improperly, or that he did not represent [the Petitioner] under the guidelines that the law requires.

I am satisfied that he did receive adequate representation and that it met all of the standards of the law that I know there to be. So I find that there is no basis for me to grant a post-conviction relief.

I find that [Counsel], thoroughly, represented [the Petitioner] and that he entered his guilty plea freely, voluntarily and without threats, coercion and full knowledge of what he was facing.

So I will deny the petition for post-conviction relief.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner maintains that his guilty plea was the result of coercion and, therefore, not knowing and voluntary. The State responds that the Petitioner has failed to prove that he received the ineffective assistance of counsel. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge,

6

not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S.

at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The evidence does not show that Counsel was ineffective in his representation or that he coerced the Petitioner into pleading guilty. Counsel testified that the Petitioner initially wanted to proceed to trial but after reviewing the evidence against him decided to accept the State's offer. The discovery consisted of evidence that there was gunshot residue on the Petitioner's hands, a bullet hole in the victim's house, a television in the victim's yard, and the Petitioner's admission that he was in the victim's house and fired a gun. Counsel negotiated a minimum sentence in this case, and the Petitioner benefitted from avoiding a lengthier sentence had he been convicted at trial. This evidence supports the post-conviction court's conclusion that Counsel "thoroughly represented" the Petitioner.

Counsel testified that it was a hard decision but that it was the Petitioner's decision to plead guilty. Counsel testified that he would have proceeded to trial had the Petitioner so

wished and denied ever stating to the contrary to the Petitioner. The guilty plea submission hearing transcript supports Counsel's testimony and the post-conviction court's finding that the Petitioner willingly entered the guilty plea.

Accordingly, the Petitioner has failed to show by clear and convincing evidence that Counsel was deficient and that, but for counsel's errors, he would not have pleaded guilty but proceeded to trial. The Petitioner is not entitled to relief.

## III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied the Petitioner's petition for post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE